IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COASTAL MECHANICS CO., INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| | ) Case No._____ |
| DEFENSE ACQUISITION<br>PROGRAM ADMINISTRATION | )<br>)<br>) |
| SERVE:<br>Hyun-Gyun Chung<br>2-15 2-Ga Yongsin-dong, Yongsan-gu<br>Seoul, Republic of Korea<br>140-833 | )<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT

COMES NOW the Plaintiff, COASTAL MECHANICS CO., INC. ("Coastal Mechanics") by counsel, and moves for judgment against the Defendant, DEFENSE ACQUISITION PROGRAM ADMINISTRATION ("DAPA") on the grounds and in the amounts as hereinafter set forth.

### Parties and Jurisdiction

1. Plaintiff Coastal Mechanics is, and was at all times mentioned herein, a corporation duly incorporated in the State of Texas with its principal place of business in Houston, Texas.

2. Defendant DAPA is and was at all times herein mentioned, a foreign entity and branch of the Republic of Korea. It has a presence ("Korean Embassy #2") in Arlington, Virginia, where it conducts business with companies both in Virginia and in other states,

including Texas. Korean Embassy #2 had frequent contact with Coastal Mechanics during the relevant time period regarding the material facts of this case. Exhibit A.

3. AJ Industries Inc. is a corporation in Fort Lee, New Jersey. It also worked with DAPA and was harmed by the actions DAPA took as outlined in the Complaint below. It has assigned its rights for this breach of contract action to Coastal Mechanics. Exhibit B.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 and because the parties are of diverse citizenship and the amount in controversy is greater than $75,000.00.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) because DAPA is a "foreign state or political subdivision thereof" as DAPA is an arm of the South Korean government.

### History of Coastal Mechanics, AJ Industries Inc., and DPA/DAPA

6. Coastal Mechanics is a corporation in Houston, Texas that provides aerospace and defense manufacturing services, including maintenance, repair, and overhaul services for flight equipment for both domestic and international companies. It is a defense contractor that specializes in the manufacture of legacy support systems for foreign militaries.

7. As part of its various services, Coastal Mechanics has supplied the South Korean military with replacement parts for numerous aircraft and other military systems for over thirty years.

8. As a parts supplier, Coastal Mechanics has worked directly with companies such as the Defense Procurement Agency ("DPA"), the procurement arm for the South Korean military. For years, the companies enjoyed a productive and resilient business relationship for nearly thirty (30) years.

9. During this time, DPA was Coastal Mechanics' primary client, and as such the South Korean military could count on Coastal Mechanics to supply commodities at uniquely low prices, as well as to supply commodities that similar companies simply could not provide. These products included parts for the MD500, a helicopter favored by the South Korean military, as well as for the TOW missile systems used in tandem with the MD500.

10. In order to secure delivery of its parts, Coastal Mechanics would historically post a performance bond with DPA (and later, DAPA) equal to 10% of the contract value. Those bonds were held by DPA as security by rarely, if ever, claimed.

11. Coastal Mechanics worked alongside AJ Industries Inc. ("AJ Industries"), a corporation that also specializes in national defense and security contract work.

12. AJ Industries also had various contracts and performance bonds with DPA and DAPA.

13. AJ Industries is a contractor that has dealt with DPA much in the same way that Coastal Mechanics has.

14. Specifically, AJ Industries entered into two contracts (with a performance bond) with DPA (now DAPA) that are at issue in this case: KFX-DPA-33BA09505 and KFX-DPA-31BA09506.

15. The contracts in question relate to the LAU-131/A rocket launcher, which is designed to work on helicopters or fixed-wing aircraft. Coastal Mechanics manufactured these launchers, and AJ Industries marketed them to the Korean government.

16. AJ Industries had successfully fulfilled at least two prior contracts for the LAU-131/A for DPA: KFX-DPA-71LD08135 (8 launchers) and KFX-DPA-61LD08188 (1 launcher).

17. On October 17, 2003, contractor/supplier AJ Industries won the two following contracts: KFX-DPA-33BA09505 (51 launchers for the ROK Air Force; $363,834) and KFX-DPA-31BA09506 (39 launchers for the ROK Army; $278,226). Both contracts demanded delivery within 12 months of the receipt of the letter of credit.

18. AJ Industries posted a bond in the amount of $480,450.60 USD. Exhibit C.

19. The completion date was set at October 30, 2004 but was extended to December 15, 2004.

## DPA Unilaterally Cancels Contracts

20. On or about November 30, 2004 AJ Industries sent DPA a letter and requested an extension of the delivery date of about three weeks. On December 15, 2004, DPA wrote to AJ Industries asking for a plan to fulfill the contract.

21. The reason for this request was because on or about that same day, Coastal Mechanics informed DPA of an issue encountered during the final assembly of the launchers. The production was delayed unavoidably by an error in the official U.S. Navy drawings.

22. Due to the nature of the business, all licensed defense manufacturers must conform to specified drawings. This mandate meant any manufacturer producing these parts would have run into a similar delay.

23. Thanks to the diligence of Coastal Mechanics, this error was caught before lengthier delays were caused. In fact, Coastal Mechanics alerted the U.S. Navy to the error before the Navy was even aware of the mistake.

24. The following day, AJ Industries responded to Jin Wang, head of DPA's Washington location, that a delivery date in January 2005 should be expected.

25. On December 27, 2004 DPA again requested information on the delay. The following day, AJ Industries responded with a letter detailing the errors in the U.S. Navy drawings. This same day, DPA unilaterally seized the AJ Industries' performance bond from Bank of America without notice to AJ Industries.

26. On January 27, 2005, DPA sent an official notice of termination to AJ Industries. This was the first AJ Industries heard of its termination. Exhibit D. However, AJ Industries later learned that DPA had already seized the performance bond on the date alleged above.

27. As a result of DPA's unilateral decision to cancel the above-referenced contracts, without notice to AJ Industries, AJ Industries suffered damages.

28. The actions of DPA crippled AJ Industries' liquidity, and put a dent in it's and Coastal Mechanic's ability to market the launchers for other customers in the Republic of Korea and globally. The launchers had to be sold at a severely discounted rate.

29. AJ Industries' liquidity also suffered, as it was forced to scramble to find funds to repay the bank after DPA seized the performance bond without warning.

30. AJ Industries was well on its way to fulfilling DPA contracts for the LAU-131/A launchers when it was terminated suddenly and without cause.

31. The damage to AJ Industries beyond the lost potential revenues from the cancelled contracts and lost bids. DPA seized AJ Industries' performance bond without notice, which harmed AJ Industries. Additionally, there was a full quantity of launchers that could not be sold at market price, and its production and engineering investment including raw materials, fabrication, R&D and testing, was left without a customer.

32. Finally, a key component of the launchers is the Intervalometer. The traditional intervalometer is mechanical, and prone to failures. Coastal Mechanics designed an electronic version that was more reliable and offered more flexibility and control to pilots. This new design was so impressive that the U.S. Navy expressed interest in replacing all of their launcher parts with the Coastal Mechanics upgrade. AJ Industries was not able to market these launchers for Coastal Mechanics as a result of DPA's breach of contract.

33. During this time, AJ Industries continued to perform in good faith by marketing products to South Korea.

34. Shortly thereafter, DPA (now DAPA)[1] seized the performance bond for the above contract, which equaled 10% of the contract value (or approx. $480,450.60 USD).

35. However, AJ Industries did not receive notice that the performance bond for these contracts had already been seized and that DPA had effectively terminated all its contracts. Upon learning that fact, it was apparent that AJ Industries was wasting its time on this matter – and shipping products for which it would not be compensated.

36. Essentially, DPA (now DAPA) had fabricated various deficiencies with AJ Industries' work and then terminated them without cause in 2005.

37. DPA (now DAPA) has withheld payments duly owed to AJ Industries for work that was conforming to the contracts. Furthermore, DAPA has withheld the performance bond

---

[1] Around 2006, DAPA took over the role of DPA in procuring materials for the national defense services and supplying military and defense products for South Korean military. Beginning in 2006, it took over DPA's contracts with Coastal Mechanics and AJ Industries. Coastal Mechanics and AJ Industries continued doing contract and supply work with DAPA after its replacement of DPA. DAPA is now the party standing in the shoes of DPA responsible for the breaches of these contracts.

representing ten percent (10%) of the value of the contracts. These losses from the bond totals approximately $480,450.60 USD in direct damages.

38.     DPA's actions in seizing the performance bond and not allowing AJ Industries more time to complete its work was a violation of the express terms of the parties' contracts and was inconsistent with the parties' course of dealing. Moreover, the basis for the termination was invalid and pretextual, as well as its basis for terminating all other pertinent contracts.

39.     The effect of these unlawful terminations has been considerable. AJ Industries had worked closely with Coastal Mechanics for years to market and gear its entire supply chain towards producing custom-fabricated documents only used by the Korean military. Its entire business model was focused on the Korea market, specifically DPA (now DAPA), and creating inventory that only had value to that one customer. DPA was aware of this fact.

40.     In addition to the illegal taking of the performance bond, the termination of the contracts had a disastrous effect on AJ Industries and its relationship with Coastal Mechanics, since it left it with an inventory that had no market value and no possible means to repay its lenders. The termination, and the false basis for the termination, also damaged the company's reputation and cost it potential contracts with other customers in the Republic of Korea. All of these repercussions were well-known to DPA, which nonetheless acted rashly in terminating a long-term relationship without any legal basis.

41.     AJ Industries invested a great deal of time, energy, and money to market the launchers and hire Coastal Mechanics to manufacture the product. Coastal Mechanics sank close to $1 million to create the potential assembly line for this business. The contract cancellation

forced AJ Industries to consider the entire business line a total loss, with no guarantee that future Korean launcher business would be respected or contracted legally and appropriately.

42.     AJ Industries not only lost the chance to market Coastal Mechanics' sole-source new intervalometer design and improvement, but lost consequentially greater business altogether. It did not have the funding available to pursue a potentially massive contract for these launchers with the U.S. Navy. To this day, a new replacement with the advancements Coastal Mechanics built for DPA have not been developed and put into use for the US Government, further indicating its potential success to become the new sole source. These harms are direct results of DPA misconduct.

## COUNT I –
## BREACH OF CONTRACT

43.     Each and every allegation is reiterated herein.

44.     Defendant DPA (now DAPA) and AJ Industries entered into a series of lawfully executed and binding contracts.

45.     As part of these contracts, AJ Industries posted a performance bond equaling $480,450.60 USD.

46.     AJ Industries consistently performed its tasks and invoiced DPA, and then DAPA, pursuant to the terms of the contracts.

47.     After January 2005, without cause, DPA (now DAPA) ceased payments to AJ Mechanics for work completed, withheld the performance bond, and terminated its contracts, all in violation of the terms of the parties' ongoing agreements.

48.     Defendant DAPA thereby breached its lawfully executed contracts between itself and AJ Industries.

49. AJ Industries has each suffered damages in the amount of at least $2,000,000.00, which is the approximate amount of the remaining payments on the outstanding contracts, the retained performance bond, and the loss of future business with DAPA and other South Korean companies based on AJ Industries' relationship with DAPA, as well as lost income on the work Coastal Mechanics performed in development the new launcher technology, which AJ Industries was unable to market.

PRAYER FOR RELIEF

WHEREFORE, COASTAL MECHANICS CO. INC., respectfully prays that this Court:

1. Award compensatory damages in the amount of TWO MILLION DOLLARS ($2,000,000.00) against Defense Acquisition Program Administration;

2. Award prejudgment and post-judgment interest, costs and such other relief as the Court deems appropriate.

A JURY TRIAL IS DEMANDED.

COASTAL MECHANICS CO., INC.
Eitan Levy, President

By: _____
Counsel

Nathan D. Baney, Esq., DCB #976564
J. Chapman Petersen, Esq.
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Telephone 703-277-9704
Facsimile 703-591-9285
Counsel for Coastal Mechanics, Inc.